May it please the Court. My name is Jerry Fallon. I represent Appellant Defendant James Booker. And I would like to reserve about two minutes of my time for a rebuttal. Keep your eye on the clock, please. I shall, Your Honor. I shall. Your Honor, let's start with the proposition that there is one thing that the government and the defense agree on, that the law is clear. Contract law principles do apply to the interpretation and enforcement of the It also applies Taking that as a very good starting point, let me, let me ask you this question. Sure, Your Honor. Your claim is that Booker had an oral agreement with Agents Turner and Yen on April 22, 2009, that if his information regarding Garcia or Frank or however you want to call it, his departure, later, some five days later, when he entered his plea, April 27, 2009, there was a paragraph 10 in the agreement signed by Mr. Booker saying, I agree that this agreement contains all of the promises and agreements between the two parties. Does that mean that you do not claim otherwise in the future, but you are doing so? Your Honor, no, I'm not, no, I'm not for this reason, Your Honor, is that I thought that integration clause would knock out an oral agreement, which was arrived at before the integration clause was signed. Your Honor, except there was, there are two answers to that. One, there was action and conduct after the integration clause, and we're talking about, again, a criminal defendant here. But the bottom line is that even under the Well, wait a minute, wait a minute. We're talking about action and conduct. Going back to your contract law, action and conduct sound to me like performance. The question we're dealing with is formation, formation of the contract. The contract was formed April 27th, when it was signed, and it said there are no other agreements, there are no other promises. Are you saying that the agreement or promises were made after April 27th? Absolutely, Your Honor, because we, because what is undisputed is that there was, there was the carrying out of the agreement after. That's performance. Tell me what, going back to contract law, offer and acceptance, right, bilateral contract, promises, exchange between the parties, exchange for consideration, right, what was promised and what was promised in return after April 27th, 2009? Your Honor, there was the, the, first of all, the plea agreement, the plea agreement in terms of the waiver clause, dealt only with what was contained in the plea agreement, which had a totally. That's not the way I read the contract. Let me read it again. I agree that this agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future. Now, repeat question. What promises were exchanged after April 27th, 2009? What promises were exchanged? The promise that the agent would at the very least contact the local law enforcement agency that the appellant has specifically directed him to do. That was the promise he made after April 27th? Well, but. Is that what Judge Bea asked you? I mean, it seems to me that you can't say there was a promise after the 27th, so maybe you have a different argument. Well, let me move on to the different argument. Judge Bea, you're happy enough to move on? I'm happy. I'm happy with the answer or non-answer. There you go. Well, Your Honor, let me give you then an answer. The answer is that, of course, the waiver is never, ever applicable to the breach of the underlying agreement. That's NISERC case law, that you can't – that you do not, when you waive your right to appeal, you never waive the right to appeal the underlying plea agreement or, in this particular case, the cooperation agreement. And I think the case that the government cites, it contains three exceptions to the waiver argument, which – and the second one is the one that we've been going on, which is that you cannot waive or you do not waive the government's breach of the underlying agreement, because that's sort of the predicate for your entering into the waiver. Well, if I understand what your position is, it is that the waiver extends up to the point where it was made, and you have promised that you're not going to argue that there was any other agreement made, at least up to that time, but up to that time, but that you are relying on something that happened after. Absolutely, Your Honor. So it's totally outside the scope of the waiver. And what I don't understand is what agreement was there, what promise was there after the waiver that is totally outside of it that we are supposed to try to look to. What does the record show? Well, there may not have been an express agreement. There may not have been an express agreement after the entry of plea. However, the party's conduct certainly manifests an implied agreement. The government in its brief conceded that the government had a duty to at the very end. I just don't see it. So what is the conduct? The conduct is through the cooperation and the parties carrying out their – what each party is supposed to do. For example, the appellant was obligated to be debriefed as many times as the government wanted. And the appellant – and the appellant had to – was debriefed at least two more times well after the entry of his guilty plea. So there – because there was no written agreement on the issue of cooperation and the appellant was obligated to be debriefed at least two more times well after the entry of his guilty plea. So there was no written agreement on the issue of cooperation and the appellant was obligated to be debriefed at least two more times well after the entry of his guilty plea. All these agreements were signed, or the plea agreement was signed, right? Didn't he tell them before the plea agreement was signed, some guy named Frank lives there, okay? And they said, not enough. First of all, there's two cul-de-sac streets and he don't have a last name, and they say not enough, and so they don't give him anything. And then they sign the plea agreement. Your Honor, first of all. Am I wrong? Well, let me correct the timeline. The government did not say anything. There was only a couple of days between the first proffer and the entry of the plea. The government did not say between the – had not said at the time of the entry of the guilty plea. The government had not done anything, had not said to the appellant that your information is not good enough or that we had – we, the government, had already evaluated the merits of your proffer. No. What happened was that the parties clearly contemplated that there would be ongoing discussions and proffer activity and cooperation activity, so that in essence, Your Honor, because there was not a written cooperation agreement, really, is each time that the parties took an act pursuant to an implied understanding, one can argue that there was a new agreement. I thought the district court took that into account. I beg your pardon? I thought the district court took that into account. Well, Your Honor – He said, you know, the statements were somewhat useful and gave him some credit for it. Except, Your Honor, that what we have here is uncontradicted evidence that the government did not even pick up the phone to call the local law enforcement agency that the appellant has specifically said they would be interested in the main target, this Mr. X. They would be interested in this. And the government said – wrote, in essence, through their conduct, implied. We would do that. And there's nothing in the record that contradicts Mr. – the appellant's assertion that this, indeed, was what happened. They said that even though we have no last name and no address, we promise we will call the local agency. Absolutely, Your Honor. Because we're not – he didn't just say – the record is clear. He didn't just say that there was a first name and an address. He said – he gave detailed information about how this person operated. And then he connected up two other names to this person. So what we don't know, Your Honor, is that because the government never picked up the phone to call the local agency and provide them with the same information that the appellant had given the government, we don't know if that information would have been useful or not. The government took away the utility and the usefulness of the appellant's information. It's just like the Marsu case in the Walt Disney situation that implied in there, even though there was not an express – even if there was not an express agreement – implied in there is that the government would do something, anything that would be reasonable to make use of this information, for example. Kennedy, for example, your time has run over. Thank you very much. May it please the Court, good morning. My name is Lori Gray, and I represent the United States. The defendant knowingly and voluntarily waived his right to appeal, and that waiver must be enforced absent a breach. What about Mr. Fong's position that if the agreement itself has been breached, he doesn't waive that right? That's correct. If there is a breach, then that waives – that trumps the waiver. But the record clearly shows there was no breach. The defendant's argument is a moving target. In his opening brief, he says that this oral agreement occurred before the entry of the plea. That's at page 9 of his opening brief. In his reply brief at page 4, and now today at oral argument, he says that it occurred after. What the record shows is that five days before the entry of the guilty plea, on April 22, 2009, there was a sit-down proffer. And that, Your Honors, is at excerpt of records 70 and 71, the write-up of that proffer. And that proffer states that the purpose was to learn what the defendant knew. And after the defendant was advised as to the identity of the interviewing agent and the nature of the interview, he provided the following information. There is absolutely nothing in there about any agreement. There is nothing in there about any promises. And tellingly, there is no declaration submitted by defendant's then-trial counsel stating otherwise. There is simply nothing to support this argument that there was an unwritten side oral agreement. Sotomayor, this is the only thing that troubles me here is that the stress on the waiver in the plea agreement, and that being binding, absent a breach, looks to everything that looks to what is in the plea agreement. It seems to me that the argument that is made here is that there was a the best I can do is that there is a subsequent agreement, and that the government didn't follow through, didn't really carry out its bargain with respect to that agreement, which had to do with the subsequent information that was given. Now, it seems to me that the waiver doesn't by itself constitute a waiver of a breach of a subsequent agreement. And so I'm wondering what your position is with respect to the contention that there was a later agreement that was breached. Again, Your Honor, I think the record shows that there was no later agreement. And I would again direct, Your Honors, to the excerpt of record at page 71, which is the proffer. At the end of that proffer, which, as you've pointed out, Your Honor, was devoid of any details. But let me ask you this. I wasn't exactly sure what the district court was giving him credit for. He said he gave him credit. I mean, the government agreed to give credit because of the wife. But the district court gave credit because of him. And so that led me to believe, well, there must have been something he did, perhaps subsequently, that the district judge is giving him credit for, and so there was some other sit-down or something. If I can unbundle that. That would be nice. At the end of the proffer session that was five days before the plea, the one which is devoid of any details, as you've pointed out, Your Honor, where there's no last name, there's no contact information, there's no address, the agent pushes defendant and says there's no information, there's no current relevance. Defendant admits. Defendant admitted that because of the extensive amount of time that he had been incarcerated, he was out of touch with current criminal activity on the street. And he had talked about stuff that happened in 2004 and 2007. So way before this sit-down in 2009. Recognizing that that was incomplete, he provided his wife to give him information. Now, her very detailed proffer is also in the record at Excerpt of Record 97-200. And that's replete with current information, even reference to a drug deal going down the day that they are talking to the wife. It came time for sentencing. And as I said, I would like the Court to rule that the waiver issue controls this case. But if the Court reaches the merits at sentencing, you can see that the government did not act arbitrarily or capriciously or with a bad motive because we filed the motion releasing the Court from imposing the mandatory minimum sentence. The mandatory minimum was 120 months. The government recommended, based on the wife's very specific declaration that led to a prosecutorial case, that the Court go down 6 months to 114 months. Now, defense counsel, newly appointed at that time, argued for a 4-year sentence. The Court said, the record's complete. I've got everything I need to have and denied the evidentiary hearing, which it shows the record was complete. The Court had defendants' 79-page sentencing memo that contained all these declarations. And what the Court said, Your Honor, is I understand the government's position that this was pretty undetailed and it wasn't of much value, but I'm going to say it was of some value. And that's at excerpt of record 161 and 162. So there was an initial sit-down 5 days before the plea in which he gives a very vague description. Then the wife sits down. Then sentencing, when that happened, prior to sentencing, defendants sat down with the government two more times in May 2000 and let me make sure I get these dates right, Your Honor. May 2011, two more times sat down. But the government, again, that information at that point was old and stale. He wants credit for Operation Knockout. And what's interesting to look at, his proffer, again, at excerpt of record 70 and 71, he concedes that's old information. And Operation Knockout was occurring in real time. The indictment is included in the excerpts, and it shows that that is information from January 2010 forward. Defendant knew nothing about anything after 2007. So when it came time for sentencing, Your Honor, the government made its motion releasing the court from the 120-months mandatory minimum, recommended 114 months, six months below, and the court said, I understand your position with regard to the wife. I part company with you with regard to what the defendant, I'm going to give him a little credit. It was worth something. And based on that, the court went down to 104 months. I'm happy to answer any other questions. Otherwise, I would submit on the briefs and ask that the waiver that was negotiated  Kennedy. I would ask that the waiver be a plea agreement with the integration clause, not the integration clause. I think I understand you. Thank you very much. Thank you. The case will be submitted. You have used your time up. You want to ñ we'll give you a minute. Come on. Your Honor, I just want to say two points. One, the integration clause we know cannot be taken at face value because the government signed that plea agreement with the integration clause as well. So the government is either lying about whether or not the written plea agreement contains all promises and agreements between the two parties, or it is ñ or that was just simply not a true statement, because here's why. The government knew that there was a pending agreement. If the ñ as the Court pointed out, let's just suppose there was only a pre-plea agreement, then the government would ñ the government has conceded throughout this appeal that, yes, there was an oral agreement, that ñ but the government is saying that there was no breach of that oral agreement, because otherwise the ñ the written plea agreement does not reference any kind of cooperation. Why is that? I mean, there is no getting around that the written plea agreement, including the integration clause, did not address whether or not there was this oral agreement which clearly, clearly happened because there ñ there's no dispute that the cooperation did take place. All right. We've made your point? Thank you. Thank you. All right. That concludes our hearing for this morning, and court will be adjourned until 9 o'clock tomorrow morning. Thank you very much.
judges: Restani, Schroeder, Bea